# IN THE DISTRICT COURT FOR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA ~~FOR POLK COUNTY~~ CENTRAL DIVISION

| | |
|---|---|
| TYSHEKA DUDLEY,<br><br>Plaintiff,<br><br>vs.<br><br>METLIFE GROUP INC., and MARY MOSES in her individual and official capacity.<br><br>~~Defendant~~Defendants. | CL No: 4:18-cv-00099-SMR-CFB<br><br>~~PETITION~~AMENDED COMPLAINT AND JURY DEMAND |

**COMES NOW** the Plaintiff, Tysheka Dudley, by and through her attorneys, Newkirk Zwagerman, P.L.C., and for her cause of action hereby states the following:

## INTRODUCTION

1. This is an employment discrimination action filed under the Iowa Civil Rights Act alleging race, disability discrimination, failure to accommodate, pregnancy discrimination, and retaliation toward Plaintiff by Defendant.

2. Plaintiff, Tysheka Dudley, an African American female, is resident and citizen of Des Moines, Polk County, Iowa.

3. MetLife Group Inc., (hereinafter "MetLife") is a Delaware corporation, headquartered in New York and doing business as MetLife in West Des Moines, Polk County, Iowa.

4. Upon information and belief, Mary Moses is a resident of Iowa.

5. At all relevant times Mary Moses was Plaintiff's Supervisor.

~~4.~~6. The acts of which Plaintiff complains occurred in Polk County, Iowa.

~~5.~~7. Jurisdiction and venue are proper in Polk County as MetLife's offices are located

1

in West Des Moines, Polk County, Iowa, and the actions of which Plaintiff complains occurred in West Des Moines, Polk County, Iowa.

## PROCEDURAL REQUIREMENTS

6.8.    On approximately November 10, 2016, within 300 days of the acts of which she complains, Plaintiff filed charges of employment discrimination against Defendants MetLife Group, Inc. and Mary Moses with the Iowa Civil rights Commission.

9.    Mary Moses was named in the Iowa Civil Rights Commission complaint and received notice of the same.

7.10.    Within 90 days of the date of filing this Petition, Plaintiff obtained a Right to Sue letter from the Iowa Civil Rights Commission as to all named Defendants.

## ALLEGATIONS OF FACT

8.11.    Plaintiff, Tysheka Dudley, an African American woman, was hired to work for MetLife in June 2006.

9.12.    Ms. Dudley first worked as an Annuity Service Representative and later worked as a Senior Annuity Service Representative.

10.13.    As a Senior Annuity Service Representative, Ms. Dudley's job duties were to answer and document incoming calls, educate Financial Service Representatives and internal partners, research and respond to errors, correct application and contract discrepancies, and processing delays, research special requests made by Financial Service Representatives and internal partners, and stay current with annuity markets and products.

11.14.    Prior to, and during her employment with Defendant, Ms. Dudley has been diagnosed with ADHD or Attention Deficit Hyperactive Disorder.

12.15.    Ms. Dudley's ADHD symptoms include inattentiveness, impulsivity and

hyperactivity.

~~13.~~16.  Ms. Dudley has successfully managed her ADHD for many years, even before she started working for Defendant.

~~14.~~17.  Ms. Dudley did not have work restrictions for the greater part of her ten years with Defendant because of her ADHD because she had always been able to manage her symptoms- often with medication.

~~15.~~18.  In April 2015, Ms. Dudley asked Defendant for accommodations for her disability because she was changing medications for her ADHD which caused her to experience some of her symptoms.

~~16.~~19.  Ms. Dudley was qualified to do her job and could do her job duties with her ADHD symptoms with reasonable accommodation.

~~17.~~20.  Ms. Dudley asked Supervisor Moses for a sit/stand desk, a low traffic work area, noise cancelling headphones, dictation software, additional breaks, and access to her recorded calls for note-taking purposes.

~~18.~~21.  Employee Relations told Ms. Dudley she was eligible for accommodations, including a sit/stand desk, noise cancelling head phones, a low traffic work area, dictation software, and additional breaks, but she did not receive effective accommodations for her disability.

~~19.~~22.  The sit/stand desk would not stay upright and the dictation software was not compatible with Ms. Dudley's work phone.

~~20.~~23.  Ms. Dudley complained about the ineffective accommodations to Supervisor Moses and Employee Relations, but nothing was done to get Ms. Dudley effective accommodations.

21.24. On or about August 2015, Ms. Dudley became pregnant and informed her Supervisor, Moses.

22.25. Ms. Dudley was qualified to do her job and could do her job duties while pregnant and with her ADHD symptoms with reasonable accommodation.

23.26. Ms. Dudley again asked Defendant for accommodations because she could not take her ADHD medication while pregnant.

24.27. Ms. Dudley informed Supervisor Moses that she could not take her ADHD medication while pregnant and she told her what her ADHD symptoms were and how they could impact her performance metrics.

25.28. Ms. Dudley's ADHD symptoms made it harder for her to do her job duties which involved taking, processing, and documenting multiple calls.

26.29. Ms. Dudley asked Supervisor Moses if she could move to one of the open processing positions. She also asked that her phone queue be decreased so she could manage her ADHD while pregnant.

27.30. A job in processing would have helped Ms. Dudley review her work and make needed corrections. A less busy phone queue would have helped Ms. Dudley manage her ADHD symptoms.

28.31. Supervisor Moses did not move Ms. Dudley to a processing position or change her phone queue.

29.32. In fall 2015, Ms. Dudley needed additional breaks because of her morning sickness and her need to use the restroom more frequently due to her pregnancy. Supervisor Moses gave Ms. Dudley a write up for productivity even though Ms. Dudley's productivity metric was affected by her need to take more breaks due to her pregnancy. Even though Ms. Dudley explained that her

productivity metric was affected by her pregnancy, Supervisor Moses still wrote her up.

~~30.~~33. Supervisor Moses did not engage in the interactive process or take any action in response to Ms. Dudley's request for accommodations during her pregnancy. Instead, Supervisor Moses disciplined Ms. Dudley for performance metrics tied to her ADHD symptoms—including but not limited to quality assurance metrics.

~~31.~~34. Quality assurance metrics scores were posted such that Ms. Dudley could see that her white coworkers scored lower than she did on a regular basis.

~~32.~~35. Caucasian employees that had low, or lower, quality assurance metrics scores than Plaintiff were not similarly disciplined for their scores.

~~33.~~36. Caucasian employees without disabilities from Ms. Dudley's department were permitted to change phone queues but Ms. Dudley, who requested the change as an accommodation, was not permitted to change phone queues or work in processing.

~~34.~~37. While Ms. Dudley was not taken off the busier phone queue as she requested, her Caucasian coworkers were taken off the same phone queue thereby increasing the number of calls distributed to Ms. Dudley.

~~35.~~38. Disciplining Ms. Dudley for performance measures that white employees were not disciplined for is discriminatory on the basis of race and evidence of pretext for Ms. Dudley's other discrimination claims.

~~36.~~39. Supervisor Moses did not pull Ms. Dudley's calls so that she could refer back to audio of her conversations to help her document calls. Instead she told Ms. Dudley that pulling her calls would be an inconvenience to her.

~~37.~~40. The dictation software would have transcribed calls and helped Ms. Dudley document her phone calls mitigating the symptoms of her ADHD.

38.41.  Ms. Dudley followed up with Defendant but it was several weeks before Supervisor Moses responded to her August 2015 request for effective accommodations. Instead of engaging in the interactive process, Supervisor Moses referred Ms. Dudley to Employee Relations.

39.42.  In November 2015, Ms. Dudley received a final written warning for quality assurance performance metrics that were affected by her ADHD.

40.43.  Caucasian employees that had low, or lower, quality assurance metrics scores than Plaintiff were not similarly disciplined.

41.44.  In February 2016, Ms. Dudley contacted Employee Relations because she had not been provided with effective accommodations for her disability or her pregnancy.

42.45.  Instead of engaging in the interactive process, Employee Relations recommended Ms. Dudley request job leave.

43.46.  Ms. Dudley told Supervisor Moses she believed her work performance was affected because she had not been provided the accommodations she had requested.

44.47.  Ms. Dudley asked Supervisor Moses whether she should take a leave or what other accommodations she could request in order to keep working.

45.48.  Supervisor Moses told Ms. Dudley she would work with her, however, she did not.

46.49.  By March 2016, Ms. Dudley still had no accommodations for her disability or her pregnancy.

47.50.  Defendant fired Ms. Dudley on March 4, 2016.

## COUNT I:
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT FOR
## RACE, DISABILITY (REAL OR PERCEIVED) & PREGNANCY DISCRIMINATION & FAILURE TO ACCOMMODATE

48.51.  Plaintiff realleges paragraphs 1-4750 in this petition as if fully set forth herein.

49.52.  Defendant discriminated against Plaintiff with respect to the terms and conditions

6

of her employment on the basis of her race, disability (real or perceived) and pregnancy in violation of Iowa Code § 216.

~~50.~~53.  Plaintiff is an African American female with ADHD protected by law from discriminatory practices.

~~51.~~54.  Plaintiff informed Defendant she was pregnant in August 2015.

~~52.~~55.  Plaintiff requested accommodations for her disability beginning in April 2015.

~~53.~~56.  Plaintiff requested accommodations for her pregnancy beginning in August 2015.

~~54.~~57.  Plaintiff attempted to engaged in the interactive process with Defendant, but Defendant did not engage in the interactive process with her on multiple occasions.

~~55.~~58.  Plaintiff's disability and pregnancy were motivating factors in Defendant's decision to discipline her in November 2015.

~~56.~~59.  Plaintiff complained about the previous failures to accommodate her in February 2016, but still failed to accommodate her in February 2016. These are facts which tend to show that Plaintiff's disability (real or perceived) and pregnancy were motivating factors in the decision to fire her in March 2016.

~~57.~~60.  Defendant held Plaintiff to a higher performance standard that her white coworkers.

~~58.~~61.  Defendant disciplined Plaintiff for scores that white employees were not similarly disciplined for which is discriminatory on the basis of race. These discriminatory disciplinary actions were then used as justification for Plaintiff's termination which is discriminatory on the basis of race.

~~59.~~62.  As a proximate result of Defendant's acts and omissions Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, lost wages, benefits, future earnings and other emoluments of employment.

60. In addition, Plaintiff is entitled to equitable relief including but not limited to: a) prohibiting Defendants from engaging in further discrimination, b) requirement of specific managerial training to prevent discrimination, c) reinstatement to Ms. Dudley's previous position and d) such other and further relief as is necessary to effectuate the purposes of the Iowa Civil Rights Act.

## COUNT II:
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT FOR RETALIATION

61.63.  Plaintiff realleges paragraphs 1-6063 as if fully set forth herein.

62.64.  Ms. Dudley engaged in protected activity under the Iowa Civil Rights Act and was protected from retaliation for the same.

63.65.  Ms. Dudley informed Defendant of her disability and her pregnancy in 2015.

64.66.  Ms. Dudley made multiple requests to Defendant for accommodations for her disability and her pregnancy in 2015 and 2016.

65.67.  When Ms. Dudley received ineffective accommodations, she attempted to engage in the interactive process with Defendant to manage her ADHD and her performance metrics but Defendant would not engage in the interactive process with her.

66.68.  Ms. Dudley made multiple complaints to her Supervisor and to Employee Relations regarding the lack of effective accommodations and because no one would engage in the interactive process with her to determine how to best accommodation her disability and her pregnancy.

67.69.  Plaintiff complained about the previous failures to accommodate her in February 2016, instead of accommodating Ms. Dudley, Supervisor Moses assured Ms. Dudley that her job was safe.

~~68.~~70.  Instead of engaging in the interactive process with Ms. Dudley when she reported that she was not being effectively accommodated, Supervisor Moses disciplined Ms. Dudley for performance metrics that Caucasian employees were not similarly disciplined for.

~~69.~~71.  Defendant used discriminatory performance standards to write up Ms. Dudley when she complained of discriminatory practices. Ms. Dudley had previously filed a discrimination complaint against Ms. Moses in 2013. Defendant's employees' behavior changed toward Plaintiff both after filing the EEOC complaint in 2013 and again when she requested accommodations in at least April 2015, August 2015, and February 2016 for her disability and pregnancy.

~~70.~~72.  Defendant relied on discriminatory disciplinary write-ups to fire Ms. Dudley.

~~71.~~73.  Ms. Dudley explained to Supervisor Moses that her write-ups were related to her disability and pregnancy and her need for accommodations. Supervisor Moses would tell Ms. Dudley that she knew about the pregnancy and ADHD Symptoms but would write Ms. Dudley up anyway.

~~72.~~74.  Instead of engaging in the interactive process with Ms. Dudley when she reported that she was not being effectively accommodated in February 2016, Defendant fired Ms. Dudley.

~~73.~~75.  Ms. Dudley asked Gary Peterson in Employee Relations for her job back after she was terminated. During this conversation, Ms. Dudley also told Mr. Peterson that Supervisor Moses had told Ms. Dudley to cancel her FMLA application, but Mr. Peterson did not hire Ms. Dudley back.

~~74.~~76.  As a proximate result of Defendant's acts and omissions Plaintiff has in the past and will in the future suffer damages including, but not limited to, mental and emotional distress, lost wages, benefits, future earnings and other emoluments of employment.

75.77.  In addition, Plaintiff is entitled to equitable relief including but not limited to: a) prohibiting Defendants from engaging in further discrimination, b) requirement of specific managerial training to prevent discrimination, c) reinstatement to Ms. Dudley's previous position and d) such other and further relief as is necessary to effectuate the purposes of the Iowa Civil Rights Act.

**WHEREFORE** Plaintiff prays that the Court find that Defendant unlawfully discriminated against her on the basis of her race, disability (real or perceived) and pregnancy and further find that Defendant failed to accommodate Plaintiff and also retaliated against her, and that the Court order Defendant to pay Plaintiff appropriate damages for lost wages and emotional distress in an amount to be proved at trial; that the Court order Defendant to pay all costs and attorneys' fees incurred by Plaintiff in pursuing this action, for equitable relief, and that the Court order and adjudge such other and further relief as it deems just and proper.

## JURY DEMAND

**COMES NOW** the Plaintiff, Tysheka Dudley, and hereby requests a trial by jury in the above-captioned matter.

Dated: March 27, 2018

NEWKIRK ZWAGERMAN, P.L.C.

    */s/ Beatriz Mate-Kodjo*
Jill Zwagerman AT0000324
jzwagerman@newkirklaw.com
Beatriz Mate-Kodjo AT0012331
Bmate-kodjo@newkirklaw.com
521 E. Locust Street, Suite 300
Des Moines, IA  50309
Telephone:  515-883-2000
Fax:  515-883-2004

ATTORNEYS FOR PLAINTIFF

Original filed.

ATTORNEYS FOR PLAINTIFF